## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

EXPRESS MOBILE, INC.,

                          Plaintiff,

      v.

ATLASSIAN CORP. PLC AND
ATLASSIAN, INC.,

                          Defendants.

Civil Action No. 6:20-cv-00805-ADA

## DEFENDANTS ATLASSIAN CORP. PLC AND ATLASSIAN, INC.'S MOTION TO DISMISS PLAINTIFF EXPRESS MOBILE, INC.'S COMPLAINT FOR PATENT INFRINGEMENT

## <u>TABLE OF CONTENTS</u>

**Page**

I.     BACKGROUND ...................................................................................................2

II.    LEGAL STANDARD.........................................................................................2

III.    ARGUMENT .....................................................................................................3

    A.    Express Mobile's Direct Infringement Allegations Are Not
          Plausible.....................................................................................................3

    B.    Express Mobile Has Not Alleged Facts Sufficient to Support an
          Induced Infringement Claim. ..................................................................13

    C.    Express Mobile's Enhanced Damages Request Should Be
          Dismissed..................................................................................................18

IV.    CONCLUSION...............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
    No. 13-362-WSS-JCM, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014).......................14, 17

*Aguirre v. Powerchute Sports, LLC*,
    No. 10-702-XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...........................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................2, 6, 17

*Atlas IP, LLC v. Commonwealth Edison Co.*,
    686 F. App'x 921 (Fed. Cir. 2017) .......................................................................................4

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016) ....................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................2, 3, 6, 17

*In re Bill of Lading Transmission*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................................14

*Castlemorton Wireless, LLC v. Bose Corp.*,
    No. 20-29-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)...........................................17

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)........................................................................................................14

*De La Vega v. Microsoft Corp.*,
    No. 19-612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).............................6, 12, 14

*Deere & Co. v. AGCO Corp.*,
    No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019)........................................14, 16

*Express Mobile, Inc. v. Egrove Sys. Corp.*,
    No. 17-703-RGA, 2020 WL 109251 (D. Del. Jan. 9, 2020).......................................................1

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-72-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ...............................................19

*Ganas, LLC v. Dell Inc.*,
    No. 12-324-JRG, 2013 WL 12144147 (E.D. Tex. July 25, 2013).........................................19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)......................................................................................................14

*Google LLC v. Princeps Interface Techs. LLC*,
  No. 19-6566-EMC, 2020 WL 1478352 (N.D. Cal. Mar. 26, 2020) ........................17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)................................................................................................19

*Inhale, Inc. v. Gravitron, LLC*,
  No. 18-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ...........................18

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
  No. 17-143-RP, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ...........................15

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
  No. 14-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ...........................18

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...................................................................................16

*Maxell Ltd. v. Apple Inc.*,
  No. 19-36-RWS, 2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ...........................16

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
  No. 18-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ...........................19

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)...................................................................................14

*Vega v. Maxim Integrated Prods., Inc.*,
  No. 15-1138-DAE, 2016 WL 9450607 (W.D. Tex. June 14, 2016).........................3

**Rules**

Fed. R. Civ. P. 12(b)(6).....................................................................................................2

In 2015, Express Mobile started suing companies that provide internet-based tools and has not slowed down since.  None of the cases have gone to trial, and Express Mobile has demonstrated a willingness to settle cases for nuisance value, or walk away completely.  *See Express Mobile, Inc. v. Egrove Sys. Corp.*, No. 17-703-RGA, 2020 WL 109251, at *2 & n.2 (D. Del. Jan. 9, 2020).  As Express Mobile's litigation efforts have progressed, its infringement theories have continued to stretch to cover an expanding list of defendants.  Express Mobile now targets Defendants Atlassian Corp. Plc and Atlassian, Inc. (collectively, "Atlassian") and its software products for document collaboration (Confluence), visual project collaboration (Trello), and project and issue tracking (JIRA).

The fundamental problem with Express Mobile's direct infringement allegations is that they are almost entirely conclusory and simply parrot the language of the claims.  For many elements, Express Mobile does not point to anything specific in Atlassian's products that allegedly meets the claim limitations under any claim construction.  Indeed, despite the fact that Express Mobile accuses three separate and distinct Atlassian products, its infringement allegations are almost identical for each product.  And its infringement claims are unsupported by any factual allegations sufficient to make Express Mobile's allegations plausible.

Express Mobile's induced infringement and willful infringement theories are also flawed. Express Mobile concedes that it did not even provide Atlassian notice of the asserted patent numbers until February 6, 2020, over two months after the December 2, 2019 expiration of the '397 patent.  And yet, Express Mobile bizarrely maintains claims that Atlassian induced and willfully infringed that expired patent.  Express Mobile's induced and willful infringement claims for the remaining three patents fare no better.  Express Mobile's February 2020 letter asserts infringement of just one of the four asserted patents, and makes no mention at all of JIRA

1

(one of the three accused products).  In any event, Express Mobile has not pleaded facts supporting a plausible inference that Atlassian acted with the requisite knowledge, specific intent, or egregious conduct.

Thus, despite filing over 100 suits, Express Mobile's Complaint against Atlassian does not include facts sufficient to make any of its infringement claims plausible.  By failing to identify any specific components in the accused Atlassian products that allegedly correspond to the claim limitations, Express Mobile fails to put Atlassian on notice of the claims against it, and the Complaint should be dismissed in its entirety.

## I.      BACKGROUND

This case involves four patents:  U.S. Patent Nos. 6,546,397 ("the '397 patent"); 9,063,755 ("the '755 patent"); U.S. Patent No. 9,471,287 ("the '287 patent"); and 9,928,044 ("the '044 patent") (collectively the "Patents-In-Suit").  The '397 patent expired on December 2, 2019.  Express Mobile alleges that roughly two months later, on February 6, 2020, Express Mobile notified Atlassian of the Patents-In-Suit.  D.I. 1 ¶¶ 36, 90, 156 & 198.[1]  Seven months later, on September 1, 2020, Express Mobile filed this action accusing Atlassian of infringing the four Patents-In-Suit, based on Atlassian's manufacture, sale, and use of its Confluence, Trello, and JIRA products.  D.I. 1. ¶ 26.

## II.     LEGAL STANDARD

A complaint is subject to dismissal under Rule 12(b)(6) when it fails to include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "mere possibility of misconduct" is not enough.  *See Ashcroft v. Iqbal*, 556

---

[1] Express Mobile does not attach a copy of the February 6, 2020 letter to the Complaint, and alleges only that that the letter provided notice of the Patents-In-Suit, and not any allegation of infringement.

U.S. 662, 679 (2009).  A complaint that alleges facts merely consistent with liability "stops short of the line between possibility and plausibility" and should be dismissed.  *Twombly*, 550 U.S. at 546.  In patent cases, to avoid dismissal, "a plaintiff must allege facts that a particular device infringed the patent at issue."  *Vega v. Maxim Integrated Prods., Inc.*, No. 15-1138-DAE, 2016 WL 9450607, at *3 (W.D. Tex. June 14, 2016).

## III.    ARGUMENT

### A.    Express Mobile's Direct Infringement Allegations Are Not Plausible.

A common flaw permeates all of Express Mobile's infringement allegations:  Express Mobile asserts that the claim limitations are met by the accused Atlassian products, but it does not allege which components of the Atlassian products purportedly correspond to which claim elements, or offer any factual support for its allegations.  Express Mobile's direct infringement allegations follow the same rubric for each patent and product:  (1) a description of the patented invention, *e.g.*, D.I. 1 ¶¶ 16–25 (describing the '397 patent); (2) identification and claim language for one asserted claim, *e.g.*, *id.* ¶¶ 27–28 (claiming Confluence infringes Claim 1 of the '397 patent and providing the claim language); and (3) allegations that the product meets the claim limitations, consisting almost entirely of conclusory statements parroting the claim language, *e.g.*, *id.* ¶¶ 29–35 (alleging Confluence meets the claim limitations of Claim 1 of the '397 patent).

The crucial third step—allegations about how each product purportedly meets each claim limitation—is plainly deficient across the board.  For every patent and for every product, Express Mobile's allegations consist of conclusory assertions, parroting the claim language and peppering in references to Atlassian's product names.  *Compare id.* ¶ 28 (Claim 1 of the '397 patent requires "(c) storing information representative of said one or more user-selected settings in a database") *with id.* ¶ 33 ("On information and belief, Confluence stored user-selected

settings in a database.").  The few product-specific facts Express Mobile sprinkles in to give the appearance of specificity fail to tie the product's functionality to the claim limitations in a way that makes infringement plausible.

Express Mobile's approach of parroting the claim language and sprinkling in references to Atlassian product names (without identifying instrumentalities of those products that purportedly meet the claim elements) is laid bare by the fact that the infringement allegations for any given claim ***do not vary substantively from product to product***.  Confluence, Trello, and JIRA are different products with different code bases, D.I. 1 ¶ 11, yet Express Mobile's virtually verbatim infringement allegations suggest they all infringe each of the four distinct Patents-In-Suit in exactly the same manner.  *Compare id.* ¶¶ 29–35 (Confluence) *with id.* ¶¶ 43–49 (Trello) *and id.* ¶¶ 58–64 (JIRA).

In the absence of actual ***factual*** allegations, the Court and Atlassian cannot test whether infringement is plausible.  Pleading factual support for infringement allegations is required because those facts may show that there is no plausible infringement theory.  *See Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 778 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) (court concluded infringement was implausible under "any reasonable construction" based on plaintiff's "detailed description of how the Network Products function").  As explained below for each Patent-In-Suit, Express Mobile's generic pleading approach fails to provide any facts that make infringement by any of the Atlassian products plausible.  The Complaint should thus be dismissed in its entirety.

### 1.    The '397 Patent Direct Infringement Allegations Are Deficient.

Express Mobile's infringement allegations for the '397 patent, Counts I–III, simply repeat (in triplicate) the claim language, swapping out the product names and a few minor details from count to count.  When stripped of the conclusory statements, the infringement allegations

are almost non-existent, and there certainly are not enough facts to make it plausible that each of the claim limitations is met.

For example, the chart below compares certain claim limitations to the associated allegations relating to Atlassian's product, Confluence, and demonstrates that nearly every allegation merely parrots claim language and fails to give rise to a plausible inference that the related claim limitation is met.[2]

| '397 Patent Claim 1 Limitation | Confluence Allegation(s) |
| --- | --- |
| A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays | "Confluence practiced a method to allow users to produce Internet webpages on and for computers having a browser and a virtual machine capable of generating displays." ¶ 29. |
| (c) storing information representative of said one or more user-selected settings in a database; | "On information and belief, Confluence stored user-selected settings in a database." ¶ 33.[3] |
| (e) building one or more webpages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file uses information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more webpages. | "Those user-selectable settings corresponded to commands to a virtual machine.  When a setting was selected, Confluence used it to generate JSON code.  One or more run time files containing HTML and JavaScript code communicated with the Confluence web server to send and retrieve the encoded user-selected settings and thus generate the page." ¶ 34.

". . . when a user first loaded Confluence, the Confluence web server sent the run time files to the user's web browser.  The run time files then communicated with the Confluence web server to retrieve the user-selectable settings stored in the database, and used them to generate virtual machine commands in the form of JSON code, which was sent to the web browser.  The web browser's virtual machine executed the JSON code.  That execution, in combination with the commands in the run |

_____

[2] The chart below is not an exhaustive list of all of the Complaint's deficiencies relating to the '397 patent.

[3] The Complaint also alleges that Confluence sent information to Atlassian's servers and stored it in a database, D.I. 1 ¶ 13, but no database is identified.

| '397 Patent Claim 1 Limitation | Confluence Allegation(s) |
|---|---|
| | time files, generated the page in accordance with the saved settings."  ¶ 35. |

These allegations are entirely conclusory.  Express Mobile does not identify **what** the alleged "run time files" are, **what** the alleged "virtual machine" is, **what** the alleged "database" is, or offer any factual basis for its assertion that these claim elements are present in Confluence. Likewise, Express Mobile provides no factual allegations supporting its assertion that Confluence stores user-selected settings in a database.  Indeed, Express Mobile's allegations suggest that the virtual machine and the browser are one and the same (the "web browser's virtual machine"), in contrast to the claim language which recites them as distinct elements ("computers having a browser *and* a virtual machine").  These are precisely the type of "naked assertion[s]" devoid of "further factual enhancement" that the Supreme Court has deemed insufficient at the pleading stage.  *Twombly*, 550 U.S. at 557.  Indeed, courts have consistently held that parroting claim language, without any supporting factual allegations, does not pass muster under *Twombly* and *Iqbal*.  *See De La Vega v. Microsoft Corp.*, No. 19-612-ADA, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020) (dismissing an allegation of direct infringement claim where the plaintiff only "provide[d] the claim language and . . . alleg[ations] that . . . Defendant infringes [the claim]").

These allegations fail to provide notice to Atlassian of Express Mobile's infringement claims because they do not identify the specific instrumentalities accused of practicing the claim limitations—leaving Atlassian unable to test and rebut these allegations.  For example, how can Atlassian test whether the accused virtual machine meets the claim limitations without knowing what Express Mobile claims is the virtual machine?

The failure of Express Mobile's allegations is further revealed by comparing its allegations across the three different products accused of infringement. The table below shows Express Mobile's allegations relating to the above claim limitations for Confluence, Trello, and JIRA, with language unique to each product emphasized. Tellingly, the only differences in the allegations across the three products, other than one minor difference for JIRA, are the product names.

| Confluence Allegations | Trello Allegations | JIRA Allegations |
| --- | --- | --- |
| "***Confluence*** practiced a method to allow users to produce Internet webpages on and for computers having a browser and a virtual machine capable of generating displays." ¶ 29. | "***Trello*** practiced a method to allow users to produce Internet webpages on and for computers having a browser and a virtual machine capable of generating displays." ¶ 43. | "***JIRA*** practiced a method to allow users to produce Internet webpages, ***those pages representing tracked bug reports, tasks, or issues***, on and for computers having a browser and a virtual machine capable of generating displays." ¶ 58. |
| "On information and belief, ***Confluence*** stored user-selected settings in a database." ¶ 33. | "On information and belief, ***Trello*** stored user-selected settings in a database." ¶ 47. | "On information and belief, ***JIRA*** stored user-selected settings in a database." ¶ 62. |
| "Those user-selectable settings corresponded to commands to a virtual machine. When a setting was selected, ***Confluence*** used it to generate JSON code. One or more run time files containing HTML and JavaScript code communicated with the *Confluence* web server to send and retrieve the encoded user-selected settings and thus generate the page." ¶ 34.<br><br>". . . when a user first loaded ***Confluence***, the ***Confluence*** web server sent the run time files to the user's web browser. The run time files | "Those user-selectable settings corresponded to commands to a virtual machine. When a setting was selected, ***Trello*** used it to generate JSON code. One or more run time files containing HTML and JavaScript code communicated with the *Trello* web server to send and retrieve the encoded user-selected settings and thus generate the page." ¶ 48.<br><br>". . . when a user first loaded ***Trello***, the ***Trello*** web server sent the run time files to the user's web browser. The run time files then communicated | "Those user-selectable settings corresponded to commands to a virtual machine. When a setting was selected, ***JIRA*** used it to generate JSON code. One or more run time files containing HTML and JavaScript code communicated with the *JIRA* web server to send and retrieve the encoded user-selected settings and thus generate the page. ¶ 63.<br><br>". . . when a user first loaded ***JIRA***, the ***JIRA*** web server sent the run time files to the user's web browser. The run time files then communicated |

| Confluence Allegations | Trello Allegations | JIRA Allegations |
|---|---|---|
| then communicated with the **Confluence** web server to retrieve the user-selectable settings stored in the database, and used them to generate virtual machine commands in the form of JSON code, which was sent to the web browser.  The web browser's virtual machine executed the JSON code.  That execution, in combination with the commands in the run time files, generated the page in accordance with the saved settings."  ¶ 35 | with the **Trello** web server to retrieve the user-selectable settings stored in the database, and used them to generate virtual machine commands in the form of JSON code, which was sent to the web browser.  The web browser's virtual machine executed the JSON code.  That execution, in combination with the commands in the run time files, generated the page in accordance with the saved settings."  ¶ 49. | with the **JIRA** web server to retrieve the user-selectable settings stored in the database, and used them to generate virtual machine commands in the form of JSON code, which was sent to the web browser.  The web browser's virtual machine executed the JSON code.  That execution, in combination with the commands in the run time files, generated the page in accordance with the saved settings."  ¶ 64. |

The Complaint is devoid of any allegations making plausible that these three products, which have different purposes and design, D.I. 1 ¶ 11, would infringe in exactly the same manner.  The fact that the infringement allegations allow you to freely interchange the product names and nothing else is highly suggestive that they fail to include sufficient facts to make plausible a claim of infringement by any one of the products.

### 2.    The '755 Patent Direct Infringement Allegations Are Deficient.

Express Mobile's direct infringement allegations for the '755 patent suffer from the same defects as its allegations for the '397 patent.  Once again, Express Mobile provides only conclusory statements, parroting the claim language, that fail to put Atlassian on notice of Express Mobile's infringement theory.  And once again, Express Mobile's allegations for the three separate Atlassian products are nearly identical, highlighting their deficiency.

The chart below compares certain '755 patent claim elements to the Complaint's corresponding Confluence allegations—and demonstrates that nearly every direct infringement

allegation is a conclusory recitation of claim language.[4]

| '755 Patent Claim 23 Limitation | Confluence Allegation(s) |
|---|---|
| A method of providing information to a device having a display from a web component of a web service to a device on a network. | "Confluence practices a method for providing information to a device having a display, including a web browser.  The information comes from a web service, the Confluence web server."  ¶ 85. |
| Accepting, on the device, a first code over the network, where said first code is device-dependent; accepting, on the device, a second code over the network, where said second code is device-independent and includes a plurality of symbolic names of inputs and outputs associated with the web service; | "Confluence accepts and executes device- and platform-dependent code from the Confluence web server, including HTML, CSS, and JavaScript.  It also accepts device-independent code from the Confluence web server, which includes symbolic names of inputs and outputs. Unlike the device-independent code, the device- and platform-dependent code is written for specific device platforms and devices, such as browsers, laptops, tablets, or smartphones." ¶ 86. |
| Executing said first code on the device, where the symbolic names are provided from a registry of one or more web components . . . and where the registry includes (a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs . . . where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service and (b) the address of the web service; | "The symbolic names are provided from a registry of web components related to inputs and outputs obtainable over a network.  The web components include images, text blocks, tables, and other common web components."  ¶ 87.<br><br>"The registry that Confluence uses contains the address of a web service available over a network (the Confluence web server) and symbolic names related to inputs and outputs of the web service.  The symbolic names are character strings that do not contain either a persistent address or pointer to an output value. The Confluence web server accepts both an input symbolic name and one or more associated input values from a user and returns one or more outputs having an associated symbolic name." ¶ 88. |

Once again, Express Mobile's allegations are wholly conclusory.  For example, Express

Mobile does not identify what the "device-dependent" and "device-independent" code is that

satisfies that limitation, but rather generically states that Confluence accepts and executes it.

---

[4] This is not an exhaustive list of the deficient allegations for the '755 patent as nearly every direct infringement allegation is a conclusory recitation of claim language.

D.I. 1 ¶ 86.  With respect to the "registry," which is a key element of Claim 23, Express Mobile does not even identify what the alleged registry is.  Instead, Express Mobile generically alleges that symbolic names "are provided from a registry" and that that registry meets the limitations from Claim 23 (parroting the claim language without alleging any facts in support).  *Id.* ¶¶ 87–88.  But it does not identify what that registry is, or how it meets those limitations, leaving Atlassian guessing as to Express Mobile's basis is for accusing Confluence of infringement.

And, as it did for Claim 1 of the '397 patent, Express Mobile copied and pasted its deficient infringement allegations for Claim 23 of the '755 patent across Atlassian's three products.  The allegations for Trello and JIRA are thus deficient for the same reasons.  *Compare* D.I. 1 ¶¶ 85–89 (Confluence) *with id.*, ¶¶ 97–101 (Trello) *and id.*, ¶¶ 110–14 (JIRA).

### 3. The '287 and '044 Patents Direct Infringement Allegations Are Deficient.

Express Mobile followed the same formula in alleging infringement of Claim 15 the '287 and '044 patents.  The chart below compares limitations from Claim 15 of the '287 patent to the corresponding Confluence allegations.  The claim language and associated allegations for Claim 15 of the '044 patent are very similar, and are not repeated for the sake of efficiency.[5]

| '287 Patent Claim 15 Limitation | Confluence Allegation(s) |
| --- | --- |
| A method of displaying content on a display of a device having a Player, where said Player is a device- and platform-dependent code[6] | "Confluence practices a method for displaying content on a display of a computer device having a Player – HTML, CSS, and JavaScript code written for a particular device platform, such as browsers, laptops, tablets, and smartphones.  The content is provided to the user through a web browser on webpages."  ¶ 135. |

---

[5] This is not an exhaustive list of the deficient allegations for the '287 and '044 patents, as nearly every direct infringement allegation is a conclusory recitation of claim language.

[6] The '044 patent also requires the method to include "non-volatile computer memory" meeting limitations similar to the "registry" in the '287 patent.  D.I. 1 ¶ 190.

| '287 Patent Claim 15 Limitation | Confluence Allegation(s) |
|---|---|
| defining a user interface ("UI") object for presentation on the display, where said UI object corresponds to a web component included in a registry of one or more web components . . . where the registry includes: (a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs of the web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, and (b) an address of the web service | "The method includes computer memory that stores a registry of symbolic names associated with web components – including images, text blocks, tables, and other web components. These components are related to inputs and outputs of a web service – the Confluence web server – obtainable over a network, such as the Internet or corporate intranet." ¶ 136.

"The names stored in the registry are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service. Each symbolic name has an associated data format class type corresponding to specific user interface objects that support that data format type, and are associated with preferred user interface objects. Confluence's code, including its HTML, JavaScript, and CSS code, associates these symbolic names – represented as element types, classes, and IDs in the browser's Document Object Model – with specific user interface objects." ¶ 137.

"The Confluence registry also includes the address of the Confluence web server, a web service." ¶ 138. |
| where each defined UI object is either: (1) selected by a user of an authoring tool; or (2) automatically selected by a system as a preferred UI object corresponding to a symbolic name of the web component selected by the user of the authoring tool; selecting the symbolic name from said web component corresponding to the defined UI object, where the selected symbolic name has an associated data format class type corresponding to a subclass of UI objects that support the data format type of the symbolic name, and has the preferred UI object | "Confluence also includes an authoring tool that lets users define user interface objects for presentation on the web browser. These user interface objects correspond to the web components stored in the registry. The authoring tool accesses the computer memory to select the appropriate symbolic name corresponding to the web component and associates it with the defined user interface object. A particular symbolic name is only available for particular types of user interface objects, and the defined user interface object is automatically selected by the system as the preferred object corresponding to the symbolic name of the web component selected by the user of the authoring tool. For example, a CSS stylesheet may associate all |

| '287 Patent Claim 15 Limitation | Confluence Allegation(s) |
|---|---|
|  | symbolic names with a given type of object." ¶ 139. |

These allegations fail to sufficiently allege facts establishing, or even allowing an inference, that Atlassian infringes key claim limitations of the '287 patent.  As with the '755 patent allegations, these allegations fail to identify what the "registry" is, instead merely alleging it meets parroted claim language.[7]  The '287 patent allegations also fail to identify what constitutes "authoring tool," again merely alleging that Confluence contains them and that they meet the claim limitations.  D.I. 1 ¶ 139.

Regarding the "player" limitation, Express Mobile points to "HTML, CSS, and JavaScript code written for a particular device platform, such as browsers, laptops, tablets, and smartphones" as the claimed "player," but fails to include any specifics about what "device platform" it is actually accusing, or what corresponds to these alleged engines or renderers in various browsers and operating systems.  *E.g.*, D.I. 1 ¶ 135.  Even to the extent that these elements could be considered the claimed "player," there are no allegations that Atlassian itself produces or provides the web browsers or operating systems that Express Mobile alleges includes the claimed player.  Instead, these functionalities are provided by third-parties.  *See id.* "Because [Express Mobile] does not include even a short written description of how the accused instrumentalities meet the ['player'] limitation, [the] complaint fails to state a claim upon which relief can be granted."  *De La Vega*, 2020 WL 3528411, at *6.

---

[7] Nor does Express Mobile identify what constitutes the required "non-volatile computer memory" that meets those limitations in Claim 15 of the '044 patent, again alleging in a conclusory manner that Confluence contains non-volatile memory that meets those limitations. *Id.* ¶ 193.

Express Mobile also fails to allege facts relating to how, or even whether, "preferred UI" objects are selected.  Express Mobile alleges that "[a] particular symbolic name is only available for particular types of user interface objects, and the defined user interface object is automatically selected by the system as the preferred object corresponding to the symbolic name of the web component selected by the user of the authoring tool."  D.I. 1 ¶ 139.  But there are no accompanying factual allegations supporting Express Mobile's claim that these text fields are *favored* over other UI objects as the construction of "preferred UI object" that Express Mobile agreed the claim requires.  It is just as likely that these UI objects are simply assigned, not selected or favored over other potential UI objects, and thus, cannot plausibly be considered "preferred" UI objects, under any construction of the term.

And, similar to the '397 and '755 patents, Express Mobile's infringement allegations for Trello and JIRA are substantively identical to the Confluence allegations.  *Compare id.* ¶¶ 135–41 & 191–97 (Confluence) *with id.*, ¶¶ 149–55 & 205–11 (Trello) *and id.*, ¶¶ 164–70 & 220–26 (JIRA).

**B.    Express Mobile Has Not Alleged Facts Sufficient to Support an Induced Infringement Claim.**

Express Mobile fails to sufficiently allege that Atlassian induced infringement of any of the Patents-In-Suit.  The earliest date by which Express Mobile alleges Atlassian received notice of the Patents-In-Suit was February 6, 2020, when Express Mobile sent Atlassian a letter.  That letter was sent months after the '397 patent expired, failed to specifically allege that any Atlassian product infringed any specific claim of the Patents-In-Suit, mentioned only two of the three accused products, only alleged Atlassian's customers infringe one of the Patents-In-Suit, and, even as to that patent, did not include sufficient information to provide Atlassian with knowledge to induce infringement.

"To succeed on its induced infringement claim, Plaintiff must allege facts showing that [Defendant]:  (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement."  *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 13-362-WSS-JCM, 2014 WL 12551207, at *2 (W.D. Tex. Apr. 30, 2014).  To demonstrate knowledge, the complaint must sufficiently allege both that "the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1922 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 762 (2011)).  Notices containing only conclusory allegations of infringement fail to provide requisite knowledge to induce.  *See Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 WL 668492, at *6–7 (D. Del. Feb. 19, 2019) (pre-suit letter must explain how the accused products infringe the asserted patents).

To demonstrate specific intent, the patent owner "must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing *Glob-Tech Appliances, Inc.*, 563 U.S. at 765).  Thus, to state a plausible claim for induced infringement, Express Mobile's Complaint "must contain facts plausibly showing that [defendant] specifically intended their customers to infringe the [patents-in-suit] and knew that the customer's acts constitute infringement.'"  *Affinity Labs of Tex.*, 2014 WL 12551207, at *3 (quoting *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).  Express Mobile's allegations fail this standard.[8]

---

[8] Express Mobile's allegation of induced infringement should also be dismissed because its direct infringement claim fails.  *De La Vega*, 2020 WL 3528411, at *7 (quoting *In re Bill of Lading Transmission*, 681 F.3d at 1336) ("To support a claim for indirect infringement, a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'").

### 1. The '397 Patent.

As a threshold matter, Express Mobile fails to allege Atlassian had knowledge of the '397 patent before it expired:  Express Mobile alleges Atlassian had knowledge of that patent as of February 6, 2020, D.I. 1 ¶ 36, two months after it expired in December 2019.  As explained below, the Complaint is also devoid of any allegations that would make the other elements of inducement (i.e., knowing inducement and specific intent) plausible.  Thus, claims alleging that Atlassian induced infringement of the '397 patent should be dismissed.

### 2. The '755, '287, and '044 Patents.

Express Mobile's induced infringement allegations regarding the remaining Patents-In-Suit also fail.  Express Mobile's induced infringement allegations are contained in two boilerplate paragraphs it repeats for each product and for each patent.  The first repeated paragraph alleges that Atlassian possessed knowledge of patent infringement when it "received notice," and that it had "aid[ed] and abett[ed] others . . . to infringe" by "advertising [the Accused Products] as a way for employees to collaborate on pages available on the web."  *E.g.*, D.I. 1 ¶ 91.  The second repeated paragraph generally alleges that Atlassian's advertisements aided and abetted infringement.  *E.g.*, *id.* ¶ 92.  In short, Express Mobile's induced infringement allegations are based on alleged knowledge of the Patents-In-Suit by Atlassian, coupled with the fact that Atlassian advertises and supports its products.  But Express Mobile's repeated allegations of induced infringement, "save for changing the patent number," does not properly state an induced infringement claim.  *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 17-143-RP, 2017 WL 9477677, at *6 (W.D. Tex. Nov. 28, 2017).  These allegations fail to sufficiently allege either knowledge or specific intent.  Either flaw is independently fatal.

***First***, Express Mobile fails to allege any facts suggesting Atlassian knew its customers' actions infringed the Patents-In-Suit.  The only potential sources of Atlassian's knowledge are

(1) the February 2020 letter from Express Mobile and (2) the Complaint.  Neither is sufficient for establishing Atlassian's knowledge of infringement.

The pre-suit letter, referenced but not attached to the Complaint, does not provide Atlassian with adequate notice of infringement.[9]  *See* Declaration of Timothy C. Saulsbury in Support of Defendants' Motion to Dismiss, Ex. 1 (Feb. 6, 2020 Ltr. from Devlin to Simons). The letter fails to identify any specific Atlassian product as infringing any specific patents, and is devoid of any details about how Atlassian's products infringe Express Mobile's patents.  The letter mentions only that use of Atlassian's products infringes the '044 patent (it does not even claim that Atlassian infringes the '755 or '287 patents), but even this single "example" of purported infringement is merely a shortened recitation of one of the patent's independent claims.  *Compare* '044 Patent at 39:18-40:15 (Claim 15) *with* Ex. 1 at 1–2.  The pre-suit letter does not mention or describe how either Confluence or Trello infringes the '044 (or any other) patent, and thus cannot possibly have provided adequate knowledge.  *See Deere & Co.*, 2019 WL 668492, at *6–7; *see also Maxell Ltd. v. Apple Inc.*, No. 19-36-RWS, 2019 WL 7905455, at *5–6 (E.D. Tex. Oct. 23, 2019) (pre-suit letter that did not "identif[y] the infringing products or . . . [state] that those products infringed any of the patents" was insufficient to support requisite knowledge for indirect infringement).  And with respect to the third accused product in this case, JIRA the letter does not even mention it at all.[10]  *Id.* at 1.

---

[9] This Court can consider this letter on a motion to dismiss because Express Mobile references the letter it allegedly provided Atlassian in the Complaint and the alleged notice is central to Express Mobile's claim.  *See e.g.*, D.I. 1 ¶ 90; *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (this Court can consider "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

[10] Yet Express Mobile alleges that it provided notice that JIRA infringed the Patents-In-Suit. *See, e.g.*, D.I. 1 ¶¶ 115–16.

Nor can the filing of the Complaint provide that knowledge.  *See Aguirre v. Powerchute Sports, LLC*, No. 10-702-XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("To the extent [the plaintiff] relies on knowledge of [the plaintiff's] patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement."); *see also Castlemorton Wireless, LLC v. Bose Corp.*, No. 20-29-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (dismissing an induced infringement claim where the "complaint does not plead any facts that would support an allegation of pre-suit knowledge").  Additionally, because the Complaint failed to adequately allege direct infringement of the Patents-In-Suit, as discussed above, it cannot provide the requisite knowledge to establish inducement.  *See Affinity Labs of Tex.*, 2014 WL 12551207, at *4 (dismissing claims when court is forced to "speculate as to the extent and scope of [plaintiff's] induced infringement claim," and the "allegations are not sufficient to satisfy the pleading standard established in *Iqbal* and *Twombly*").

**Second**, Express Mobile fails to allege facts supporting an inference that Atlassian had the specific intent to induce its customers to infringe.  Neither of Express Mobile's repeated inducement paragraphs suggests Atlassian knew its actions would induce its customers to infringe the Patents-In-Suit, and courts have held that general allegations such as these relating to advertising, marketing, and instruction materials are insufficient to make allegations of specific intent plausible.  *See, e.g.*, *id.* at *6 ("Plaintiff's generalized allegations that [Defendant] induced others to infringe the [patent-in-suit] through its marketing and sales tactics are . . . insufficient" to support an induced infringement claim); *Google LLC v. Princeps Interface Techs. LLC*, No. 19-6566-EMC, 2020 WL 1478352, at *4 (N.D. Cal. Mar. 26, 2020) (dismissing induced infringement claims based on "general and imprecise references" to the fact that the defendant

"distribut[ed] the Accused Instrumentalities and provid[ed] instructional materials and/or services related to the Accused Instrumentalities").

Express Mobile has failed to adequately plead facts that give rise to an inference of inducement and so those claims should be dismissed.  *See Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 14-134-LY, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015) (dismissing induced infringement claims because it "suffer[s] from the . . . lack of inference-supporting facts and reliance on conclusory statements that merely mirror the elements of the cause of action").

### C.    Express Mobile's Enhanced Damages Request Should Be Dismissed.

Express Mobile alleges willful infringement of all four Patents-In-Suit based on purported pre-suit knowledge of the Patents-In-Suit.  For each of the patents and for each of the three Atlassian products, the allegation states in total: "Since February 6, 2020, Atlassian's infringement of the [patent-in-suit] has been willful."  *See e.g.*, D.I. 1 ¶ 39.  As with inducement, Express Mobile fails to allege Atlassian even knew of the '397 patent before it expired in 2019, making a claim for willful infringement of that patent untenable.

Express Mobile's willfulness allegations for the remaining Patents-In-Suit also fail.  The willfulness contentions amount to alleging that Atlassian (1) knew of the patents starting in February 2020, and (2) continued to infringe after receiving that notice.  As explained above with respect to induced infringement, Express Mobile fails to allege any facts suggesting Atlassian knew its conduct (or its customers' conduct) was infringing.[11]  Express Mobile's

---

[11] Moreover, the Complaint cannot serve as a basis for establishing the requisite knowledge of willful infringement because pre-suit knowledge of the patent-in-suit is required to state a claim for willful infringement.  *See Inhale, Inc. v. Gravitron, LLC*, No. 18-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018).

claims for willful infringement fail for the additional reason that it alleges no facts suggesting

Atlassian's decision to continue offering its products after receiving notice amounted to

"egregious" misconduct.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016)

(enhanced damages reserved for "egregious cases of misconduct beyond typical infringement");

*Ganas, LLC v. Dell Inc.*, No. 12-324-JRG, 2013 WL 12144147, at *2 (E.D. Tex. July 25, 2013)

(dismissing willful infringement claim based just on "notice being made as of the date of

correspondence with . . . Defendant, or at least as early as the date of the filing of th[e]

Complaint," but lacking in "any particular facts that might support willfulness"); *see also Finjan,

Inc. v. Cisco Sys. Inc.*, No. 17-72-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017)

(dismissing willful infringement claims where complaint did not include any "specific factual

allegations about [defendant's] subjective intent, or any other aspects of [defendant's] behavior

that would suggest its behavior was 'egregious'").

     Instead, Express Mobile offers only conclusory allegations regarding willfulness, devoid

of any factual basis to support its request for enhanced damages, and so its willful infringement

claim should be dismissed.  *See Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 18-309-LY, 2018 WL

8261315, at *3 (W.D. Tex. Nov. 30, 2018) (dismissing willfulness claim because merely stating

the "legal conclusions" that the defendant willfully infringed is a "fatal flaw[]" to a willfulness

claim).

## IV.    CONCLUSION

     For the above reasons, the Complaint's claims for direct, induced, and willful

infringement fail to satisfy the applicable pleadings standards.  Atlassian respectfully requests

that the Complaint be dismissed in its entirety.

Dated:  December 22, 2020                     Respectfully submitted,


By: */s/ Melissa R. Smith*
TIMOTHY C. SAULSBURY (*Pro Hac Vice*)
tsaulsbury@durietangri.com
ADAM R. BRAUSA (*Pro Hac Vice*)
abrausa@durietangri.com
VERA RANIERI (*Pro Hac Vice*)
vranieri@durietangri.com
RAGHAV R. KRISHNAPRIYAN (*Pro Hac Vice*)
rkrishnapriayn@durietangri.com
ERIC C. WIENER (*Pro Hac Vice*)
ewiener@durietangri.com
**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:  415-236-6300

MOON HEE LEE (*Pro Hac Vice*)
mlee@durietangri.com
**DURIE TANGRI LLP**
953 East 3rd Street
Los Angeles, CA 90013
Telephone:  213-992-4499
Facsimile:  415-236-6300

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

***Attorneys for Defendants***
***ATLASSIAN CORP. PLC and***
***ATLASSIAN, INC***.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document *via* the Court's CM/ECF system per Local Rule CV-5(b)(1) on December 22, 2020.

*/s/ Melissa R. Smith*

Melissa R. Smith
