FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **EXPRESS MOBILE, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | **6-20-CV-00805-ADA** |
| *v.* | § | |
| | § | |
| **ATLASSIAN CORP. PLC,** | § | |
| **ATLASSIAN, INC.,** | § | |
| *Defendants.* | § | |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE

Before the Court is Defendants Atlassian Corp. PLC and Atlassian, Inc.'s (collectively, Atlassian) Motion to Transfer Venue to the Northern District of California. ECF No. 36. Express Mobile filed its Response on April 21, 2021. ECF No. 45. Atlassian filed its Reply on April 28, 2021. ECF No. 47. For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

Express Mobile filed this lawsuit on January 12, 2021, alleging infringement of its U.S. Patent Nos. 6,546,397; 9,063,755; 9,471,287; and 9,928,044 (collectively, the "Patents-in-Suit"). Pl.'s Am. Compl., ECF No. 26 at ¶¶ 26, 39, 49, 69, 85, 98, 121, 137, 152, 177, 193, 208. Express Mobile contends that Atlassian "manufactured, used, offered for sale, or sold browser-based website building tools that infringed" Express Mobile's patents. *See id*. Express Mobile names Confluence, Trello, and JIRA (collectively, the "Accused Products") as the tools infringing its patents. *See id* at ¶ 11.

Atlassian filed the instant Motion on February 26, 2021, moving that the Court transfer this case to the Northern District of California ("NDCA"). Def.'s Mot. at 1. Atlassian has offices in eleven countries, but its principal offices are in San Francisco, California, and Sydney, Australia. *See* Defs.' Mot. at 1. Express Mobile is a Delaware corporation with "a place of business" in Novato, California (within the NDCA). *See* Pl.'s Am. Compl. at ¶ 3.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. Section 1404(a) places discretion in the district court to consider the convenience and fairness of motions to transfer on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). The burden to prove by good cause that a case should be transferred for convenience falls squarely on the moving party. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

As a threshold matter under § 1404(a), a court must determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If this requirement is met, "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private factors a court considers are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). The public factors

include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Courts evaluate these factors based on the situation that existed at the time of filing the lawsuit, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960); *EcoFactor, Inc. v. Google LLC*, No. 6-20-CV-00075-ADA, 2021 WL 1535413, at *1 (W.D. Tex. Apr. 16, 2021). Additionally, the weight the Court gives to each of these factors will necessarily vary from case to case. *Burbank Int'l Ltd. v. Gulf Consol. Int'l Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977).

While a plaintiff's choice of venue is not itself a factor in the venue transfer analysis, *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *2 (W.D. Tex. Oct. 7, 2019), a plaintiff's selection of venue is entitled to deference. *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012). "The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient." *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6-20-CV-00555-ADA, 2021 WL 860007, at *1 (W.D. Tex. Mar. 8, 2021) (citing *Volkswagen II*, 545 F.3d at 314 n.10 (5th Cir. 2008)). The burden on the moving party "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id*. at 315. "If, when added together, the relevant private and public interest factors are in equilibrium, or even if they do not clearly lean in favor of the transferee venue, the motion must be denied." *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-CV-00472-ADA, 2021 WL 1166772, at *3 (W.D. Tex. Mar. 24, 2021).

## III. ANALYSIS

The threshold determination under Section 1404(a) is whether this case could initially have been brought in the destination venue—the Northern District of California. In actions for patent infringement, venue is proper "where the defendant resides" or "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because Atlassian has an established place of business in the NDCA, this action could have originated there. Def.'s Mot. at 8. Express Mobile does not dispute this conclusion. *See generally*, Pl.'s Resp. Thus, the Court will proceed with its analysis of the private and public interest factors.

**A. The Private Interest Factors Slightly Favor Transferring to the Northern District of California.**

***i. The Relative Ease of Access to Sources of Proof Factor Favors Transfer***

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). This factor is about the *relative* ease of access, not the *absolute* ease of access. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Additionally, courts "look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

The Court will begin by cautioning against conflating witnesses as sources of proof with documents as sources of proof. Witnesses are not sources of proof to be examined under this

factor. *See In re Apple Inc.*, 979 F.3d at 1339; *see also Volkswagen II*, 545 F.3d at 315. To the extent parties advanced these arguments, the Court will properly address them within the remaining factors pertaining to witnesses.

In its Motion, Atlassian argues that the "vast majority" of relevant documents are either in the NDCA or in locations "from which travel to the NDCA is significantly more convenient, like Australia." Defs.' Mot. at 8–9. Regarding the "master versions" documentation concerning all the Accused Products and their marketing, Atlassian states that those are stored using Amazon Web Services servers. *Id.* at 3–5. Atlassian contends that AWS has servers in the San Francisco Bay Area but not in this District. *Id.* Atlassian further notes that Express Mobile's documents are more likely to exist in the NDCA because Express Mobile is located within the NDCA. *Id.* at 9. Also, its most recent CEO and one of the named inventors of the Patents-in-Suit, Mr. Steven Rempell, resides in the NDCA. *Id.*

In Response, Express Mobile focuses on what it believes is the most crucial evidence to their case—source code. Pl.'s Resp. at 3. Express Mobile contends that Atlassian conceded that the location of the source code for all of the Accused Products is stored in Oregon and Virginia. *Id*. Express Mobile further argues that Atlassian's documents are not clearly located in the NDCA. *Id.* It references responses to interrogatories where Atlassian lists locations across the country and the globe of possible locations for Atlassian's revenue and accounting documentation. *See id.* at 3–4 (listing Washington, Arizona, Illinois, Massachusetts, Virginia, Oregon, California, Ireland, England, Netherlands, and Germany). As to the marketing documents stored on Atlassian's internal Confluence server, Express Mobile argues that the server is "serviced by cloud computing farms in Oregon and California." *Id.* at 4.

Express Mobile also asserts that Atlassian's "vagueness" regarding the location of its documents "is fatal to its claims." *Id.* Express Mobile claims that Atlassian has not clearly shown that its documents are closer to the NDCA than the WDTX. *See Id.* at 5. Express Mobile argues that only the preferred forum and the transferee forum are relevant under this factor, even if they are close to the sources of proof. *Id.* As to the location of its documents, Express Mobile argues those are irrelevant because the issue under this factor is the location of the Defendants' documents. *Id.*

In Reply, Atlassian notes that servers in Santa Clara, California (located within the NDCA) are used as backups to "some of the relevant source code." *See* Defs.' Reply at 5. Servers in the NDCA also host two of the three Accused Products. *Id.* Further, Atlassian's "internal Confluence instance" hosts "a number of other relevant documents" and is "partly" served from the NDCA. *Id.* Lastly, Atlassian argues it was never "deliberate[ly] vague[]" as Express Mobile contends. *Id.* Atlassian identified multiple locations of servers because "'given the use of cloud-based storage, documents may be located on multiple servers.'" *Id.* (quoting *Uniloc 2017 LLC v. Apple Inc.*, No. 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020)).

Looking first at the location of Atlassian's master documents, Atlassian skirts the edge without definitively addressing the location of those documents. Atlassian informs the Court that its documents are stored on AWS servers. Defs.' Mot. at 3–5. Atlassian goes further and says that AWS "has servers" in the NDCA. *Id.* at 3. However, Atlassian wants the Court to infer from those facts that the AWS servers *containing* its documents are in the NDCA. Vague assertions such as the one proffered by Atlassian do not provide the Court with enough substance to properly weigh the contribution of those documents in this analysis. *See USC IP P'ship*, 2021

WL 860007, at *3. As to the location of the relevant source code, the Court is informed that the code, in part or whole, is stored on servers in Oregon, Virginia, and the NDCA. *See* Pl.'s Resp. at 3; Defs.' Reply at 5. Further, servers in the NDCA also host two of the three Accused Products. Defs.' Reply at 5.

Regarding the location of Express Mobile's documents, this Court has noted the focus must remain on the location of the defendant's documents because the alleged infringer "will likely have the bulk [relevant documents]." *Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-CV-00355-ADA, 2020 WL 6136783, at *3 (W.D. Tex. Mar. 30, 2020)). Therefore, the location of Express Mobile's documents bears no weight in this analysis.

Because Atlassian has identified that the Accused Products and at least portions of source code are on servers located in the NDCA, the Court finds that this factor slightly favors transfer.

*ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses is Neutral*

Under this factor, courts consider "the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Solas OLED Ltd. v. Apple Inc.*, No. 6:19-CV-00537-ADA, 2020 WL 3440956, at *5 (W.D. Tex. June 23, 2020); *Fintiv, Inc.*, 2019 WL 4743678, at *5; *Volkswagen II*, 545 F.3d at 316. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*,

No. CV A-15-CA-0910-LY, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted).

Atlassian argues in its Motion that because the twelve California-based witnesses it names are outside of the Court's subpoena power, this factor should weigh for transfer. Defs.' Mot. at 10. Atlassian believes that it is highly likely that "third-party witnesses will be relevant, some of whom may be unwilling to testify in this case." *Id.* For example, Atlassian names prior art witnesses, former officers, directors, attorneys, and employees of Express Mobile, some of which were subpoenaed in other cases. *Id.* Atlassian is not aware of any third-party witnesses in the WDTX. *Id.*

In Response, Express Mobile argues that Atlassian only speculated about their "witness's potential unwillingness to testify." Pl.'s Resp. at 6. Express Mobile identifies that at most Atlassian has alleged subpoenas were issued in past litigation on two potential third-party witnesses in the NDCA. *Id.* However, Express Mobile asserts that simply because subpoenas were served in a previous case does not prove a party's unwillingness to testify. *Id.* As to the prior-art witnesses, Express Mobile claims Atlassian did not explain their relevance.

Atlassian rebuts Express Mobile's argument regarding the need to identify witnesses as unwilling by arguing it has no obligation to do so. Defs.' Reply at 4. Atlassian argues that whether it has "identified any of its nonparty witnesses as unwilling to testify does not factor into the court's analysis[.]" *Id.* (citing *MG Bldg. Materials, Ltd v. Paychex, Inc.*, No. SA-10-CA-0267-FB, 2011 WL 13324380, at *10 (W.D. Tex. Mar. 28, 2011)). Lastly, Atlassian argues that

Express Mobile has not contested the relevance of the named former Express Mobile witnesses and notes that two of the witnesses have indicated they are unwilling to come to this District for trial. *See id.*

The Court first addresses the prior art witnesses that Atlassian names in its Motion at 7. The Court has previously held regarding prior art witnesses because they are unlikely to testify at trial, they do not weigh for or against transfer. *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). The Court finds the same is appropriate in this case.

It is well established in this Court that "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020). As Judge Jordan has noted, "[o]nly witnesses potentially unwilling to attend trial are considered under this factor. Identifying a pool of likely unwilling witnesses has some probative value in determining convenience, although greater specificity as to the identity of those witnesses creates greater probative value." *Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184, at *4 (E.D. Tex. May 20, 2021). While Atlassian names several witnesses under this factor, the Court does not recognize a presumption of unwillingness for these witnesses. *See* Defs.' Mot. at 5–7.

However, Atlassian has provided Declarations of two witnesses for which the Court must consider if the compulsory process in the NDCA weighs in favor of transfer: Mr. Antony Faustini and Mr. Arturo Crespo. Mr. Faustini provides consulting services with most of his clients "being in the San Francisco Bay area." Ex. 8 at 1 to Defs.' Reply. He has limited his travel due to the COVID-19 pandemic and has "no reason or desire to travel to Texas." *Id.* As a

result, "[he] would not be willing to travel voluntarily" to provide testimony. *Id.* His patent was cited as prior art in this litigation. *Id.* For two reasons, the Court concludes Mr. Faustini's weight under this factor is negligible. First, he is named as a prior-art witness, and as the Court has discussed, prior-art witnesses do not sway the outcome. Second, while he has noted an unwillingness to come to Texas, he did not say he is unwilling to testify *at all*. *See id.* Because he is willing to testify in the NDCA, the subpoena power of the NDCA will not be needed.

Regarding Mr. Crespo, his work has been cited as prior art in this litigation. Ex. 9 at 1 to Defs.' Reply. He stated that he is unwilling to come to Texas to testify. *Id.* However, just as was the case for Mr. Faustini, Mr. Crespo did not say he was unwilling to testify in California. *See id.* Because both Mr. Faustini and Mr. Crespo are named as prior-art witnesses, neither have testified that they would be unwilling to attend trial in California. Because no other witnesses were properly raised, the Court finds this factor neutral.

### iii. *The Cost of Attendance for Willing Witnesses is Neutral*

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv, Inc.*, 2019 WL 4743678, at *6. "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Am. Inc.*, 2021 U.S. Dist. LEXIS 47242 at *19 (W.D. Tex. Feb. 2, 2021); *see Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020). While not necessarily dispositive, the distance a witness must travel is relevant in this analysis. *Volkswagen II,* 545 F.3d at 317 (noting that increased distance means increased inconvenience); *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-CV-00472-ADA, 2021 WL 1166772, at *6 (W.D. Tex. Mar. 24, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. However, the inconvenience of foreign witnesses, who will have to travel a substantial distance to be present in any U.S. court, is weighted less heavily than that of domestic witnesses. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (citing *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (traveling from the United Kingdom to New York was only marginally more convenient than traveling to Tennessee)); *Bionx Implants, Inc. v. Biomet, Inc.*, 1999 U.S. Dist. LEXIS 8031 at 3 (traveling from Finland to Indiana was not a greater inconvenience than traveling to New York)).

The Court will also note, given typical time limits at trial, it will not be assumed that all of the party and third-party witnesses listed in the briefing for this Motion will testify at trial. *See Fintiv, Inc.*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any— will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses will not compel the outcome under this factor. *Id.*

In its Motion, Atlassian asserts that key non-party and party witnesses reside in the NDCA or in locations like Australia, from which travel to the NDCA is more convenient than the WDTX. Defs.' Mot. at 10–11. Regrading Express Mobile, Atlassian claims there are relevant third-party witnesses in the NDCA and none in the WDTX. *Id.* at 11. As to its engineers that reside in the NDCA, Atlassian asserts the NDCA is "vastly more convenient" for them to testify. *Id.* As to these witnesses, Atlassian notes flight time to this venue would range from five to eight hours. *Id.* Atlassian further notes the additional costs associated with travel to this District that

would not exist in the NDCA. *Id.* As to the witnesses in Australia, Atlassian acknowledges that travel to either District is time-consuming, but Atlassian also argues the difference between the two is substantial. *Id.* Atlassian notes it has employees in Austin; however, they do not possess unique relevant knowledge about the Accused Products. *Id.* at 12. Lastly, Atlassian mentioned travel concerns relating to the COVID-19 pandemic. *Id.* It notes that flights to and from Australia are minimal and that Australia imposes extensive travel restrictions on those entering the country. *Id.* at 13.

In Response, Express Mobile notes that the Court has given the cost of travel very little weight under this factor. *See* Pl.'s Resp. at 7. Thus, as to the witnesses in Australia, Express Mobile argues the Court should give the convenience of these witnesses little weight because there is no meaningful difference in travel from Australia to either District. *Id.* Express Mobile also notes that most witnesses are in Australia or other locations across Europe and Asia. *Id.* As such, Express Mobile argues there is no difference in convenience for these witnesses if this case is transferred or not. *Id.* at 8.

Express Mobile further argues that the employees Atlassian names in the NDCA cannot offset the fact that there are potential witnesses in both forums. *Id.* at 9. Express Mobile notes that Atlassian has identified "nearly 100" employees in Austin whose work relates to the Accused Products. *Id.* "Included in that group are a senior engineer, lead designer, and senior web developer for Jira, a software engineer for Confluence, and senior engineers and managers for Trello." *Id.* Because Atlassian describes the Austin employees' knowledge regarding the Accused Products as not "unique," Express Mobile contends the employees in Austin contain relevant knowledge shared with the other Atlassian employees in the NDCA. *See id.* Finally, as

to the convenience of specific managers named by Atlassian, Express Mobile argues they were "cherry-pick[ed]" to present the NDCA as a more convenient venue. *Id.*

In Reply, Atlassian argues the employees in the WDTX are not relevant or that Express Mobile has not shown they worked on the accused functionality. Defs.' Reply at 2–3. Atlassian further notes the Express Mobile does not contest the relevance of the employees named in the NDCA. *Id.* at 2. As to the WDTX employees Express Mobile mentions by job title in its Response at 9, Atlassian provides some further context and argues none are relevant. *Id.* at 3. Mr. Robinson worked in design, not writing code for an unaccused product, and now works on data visualization for Jira, rather than any accused functionality. *Id.* Mr. Harrison works on new-user registration for Atlassian products and not the accused (or any other product-related) functionality. *Id.* Mr. Pandey works on code to determine whether a user has the permissions to perform a given action rather than any accused functionality. *Id.* And Mr. Busam has left Atlassian. *Id.* Lastly, Atlassian argues Express Mobile "attempts to minimize" the inconvenience imposed on the Australian witnesses by stating that the NDCA and the WDTX are similarly inconvenient. *Id.* at 3.

While the Fifth Circuit has recognized that it is more convenient for witnesses to testify from their home district, *see Volkswagen II*, 545 F.3d at 317, it is also true that a party "cannot simply 'cherry-pick' witnesses in order to present one venue as more convenient than another." *CloudofChange, LLC*, 2020 WL 6439178, at *4. Atlassian's choice of adjective to describe the knowledge possessed by its employees in Austin is intriguing. Atlassian does not argue that the over one hundred named employees in Austin do not possess *any* relevant knowledge. *See* Defs.' Mot. at 12. Instead, it claims the Austin employees do not possess any *unique* relevant knowledge. *Id.* The Court concludes that Atlassian is conceding that the employees in the NDCA

contain at least the same information as the employees it names in Austin. However, neither party has addressed if the employees named in the NDCA contain *more* information regarding the Accused Products than the employees in Austin. Thus, providing a list of employees with information in the NDCA without showing those employees possess knowledge not available by the employees in the WDTX will not weigh against transfer.

Regarding the convenience of the many party witnesses in Australia, their weight in this analysis is negligible for two reasons. First, it is well established that party witnesses are given minimal weight in this analysis because their participation in litigation is almost always to their benefit and compelling party witnesses is always available internally. *See SITO Mobile R&D IP*, 2021 WL 1166772, at *6; *see also, e.g., Wsou Invs., LLC v. Microsoft Corp.*, No. 6:20-CV-00454-ADA, 2021 WL 1298935, at *4 (W.D. Tex. Apr. 7, 2021). Second, the inconvenience of traveling from Australia is negligible here because "the convenience of foreign corporations is generally given little weight in the venue analysis because travel to any U.S. venue would impose a similar degree of inconvenience." *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2019 WL 5596504, at *6 (E.D. Tex. Oct. 30, 2019); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Atlassian's argument regarding the travel requirements in Australia is also unavailing. The potential venue for this case is the NDCA, not Australia. The witnesses in Australia will still have to travel outside the country whether or not this case is transferred to the NDCA. This Court is cognizant of the realities this pandemic has brought around the world. To the extent any parties have concerns regarding the COVID-19 pandemic, the Court permits persons to appear at "hearing[s], deposition[s], mediation[s], or trial[s] . . . by teleconference, videoconference, or

other method." Standing Order Regarding Coronavirus (COVID-19) and Court Proceedings (Mar. 12, 2020).

After considering all the witnesses and their knowledge and expertise regarding the Accused Products, the Court finds this factor is neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive are Neutral

When considering the fourth private interest factor, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at \*5 (E.D. Tex. Mar. 21, 2013).

Atlassian argues that because there are eleven related cases concerning the Patents-in-Suit before Judge Seeborg in the NDCA, this factor strongly favors transfer because this case "would likely" be assigned to him. *See* Defs.' Mot. at 13. By now, Judge Seeborg has held *Markman* hearings in at least two, perhaps even three of the cases. *See id.* at 14. However, because of the infancy of this case, Atlassian believes it is ripe for transfer. *See id.* Atlassian also notes the pending Motions to Transfer in the other related cases currently before the Court and reasons if those Motions are granted, there would be no purpose in having this case in the WDTX. *See id.*

Express Mobile, in response, notes the four other cases pending over the same Patents-in-Suit before this Court. Pl.'s Resp. At 10. By transferring the case, Express Mobile argues it would "disrupt the economies achieved by keeping the cases moving on the same track." *Id.* Express Mobile further contends that relying on speculation regarding pending Motions to

Transfer is no sound way to resolve the instant Motion. *See id.* As to the cases before Judge Seeborg, Express Mobile notes most of them were filed after this case was filed. *Id.* Accordingly, Express Mobile argues those latter cases should not factor into the Court's analysis. *Id.* In reply, Atlassian recapitulates the number of relevant cases in the NDCA and the benefit or coordinating transfer of this case with that District. *See* Defs.' Reply at 5.

The Court does acknowledge the cases over the same Patents-in-Suit currently in the NDCA. However, five cases over those same patents are presently in this District. *See Express Mobile, Inc. v. Expedia Grp., Inc.*, No. 6:20-CV-00801-ADA; *Express Mobile, Inc. v. eBay Inc.*, No. 6:20-CV-00802-ADA; *Express Mobile, Inc. v. Facebook Inc.*, No. 6:20-CV-00803- ADA; *Express Mobile, Inc. v. Google LLC*, No. 6:20-CV-00804-ADA. Transferring this case will not alter that fact. Because this case is in its infancy, whether or not the Court grants this Motion, the same substantive proceedings will be completed in either forum. The same holds for the efficiency arguments regarding Judge Seeborg. While he has completed substantive proceedings relating to the Patents-in-Suit, this Court will also have to undergo those same proceedings for the Patents-in-Suit in this District. The Court, therefore, finds this factor neutral.

**B. The Public Interest Factors Disfavor Transferring to the Northern District of California.**

***i. Administrative Difficulties Flowing from Court Congestion Heavily Disfavor Transfer***

Courts evaluating this factor consider the speed with which a case can come to trial and be resolved. *In re Genentech, Inc.*, 566 F.3d at 1347. In other words, "whether there is an appreciable difference in docket congestion between the two forums." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). Setting a speedy trial date is not necessarily dispositive of this factor. *See In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).

In its Motion, Atlassian argues this factor at most slightly disfavors transfer because the WDTX has a shorter median time-to-trial than the NDCA. Defs.' Mot. at 15. However, because this litigation is in such an early stage, Atlassian believes speculating on trial schedules bolsters the reason to find this factor neutral. *Id.* Express Mobile responds by noting the exact difference in the median time-to-trial, 20.4 months in the WDTX and 44.5 months in the NDCA. Pl.'s Resp. at 11. It further notes that some of the Express Mobile cases in the NDCA have partially stayed pending *ex parte* reexamination of two patents, which could take years. *Id.* In Reply, Atlassian argues this factor is neutral, citing a relatively recent decision in which the Federal Circuit found this factor neutral when comparing the WDTX with the NDCA. *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020); Defs.' Reply at 5.

Regarding *In re Apple Inc.*, the Court notes that the decision was based on pre-COVID-19 pandemic data. *See* 979 F.3d at 1344–1345. However, more recent data shows that "for patent cases since 2016, the average time to trial in NDCA was 34.1 months." *Demaray LLC v Samsung Electronics Co., et al.*, No. 6-20-CV-636-ADA, ECF No. 115 at 11 (W.D. Tex. Jul. 1, 2021). By contrast, this Court's Order Governing Proceedings—Patent Case ("OGP")—sets patent cases for trial fifty-two weeks after *Markman* hearings. Despite many cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., CloudofChange, LLC*, 2020 WL 6439178, No. 6-19-CV-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc., et al. v. Amazon.Com Inc., et al.*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months

from case filing to trial). Therefore, the time to trial for patent cases in this Division is almost twelve months shorter on average than in the NDCA.

Further, the trial backlog in the NDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 would make the time to trial for patent cases, and all cases in general, even longer. By contract, this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020 and has since conducted at least seven jury trials, six of which are patent jury trials. In the first half of 2021 alone, this Court has already completed five patent jury trials in Waco. Taken these into consideration, the differences in average time to trial in this Court and the NDCA could be much longer than twelve months. The Court, therefore, finds this factor weighs heavily against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home is Neutral

Under this factor, "[a] local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015). If the current forum and the proposed transferee forum both have a strong localized interest, this factor is neutral. *See, e.g., Broadband iTV, Inc. v. DISH Network L.L.C.*, No. 6-19-CV-00716-ADA, 2021 WL 1566455, at *6 (W.D. Tex. Apr. 20, 2021).

Atlassian is headquartered in Australia and has offices around the world, including the NDCA and the WDTX. Pl.'s Resp. at 11; Defs.' Mot. at 15. It has "a number" of employees within the NDCA, Defs.' Mot. at 15, but has two offices in Austin, Pl.'s Resp. at 12. While Confluence was developed in the NDCA and Australia, Trello was significantly developed in the WDTX. Defs.' Mot. at 15; *see* Pl.'s Resp. at 12. These facts, in concert, draw the Court to

conclude that there is no localized interest in either forum such that would tilt the balance. Accordingly, the Court finds this factor neutral.

### iii. Familiarity of the Forum with the Law That will Govern the Case is Neutral

Both parties agree this factor is neutral. Defs.' Mot. at 15; Pl.'s Resp. at 12. The Court agrees and finds this factor neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law is Neutral

Both parties agree this factor is neutral. Defs.' Mot. at 15; Pl.'s Resp. at 12. The Court agrees and finds this factor neutral.

## IV. CONCLUSION

After reviewing the record, arguments, and applicable law before it, the Court finds that Atlassian has not met its burden in showing that the Western District of California is clearly more convenient than this District. Therefore, the Court **DENIES** Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a).

SIGNED this 2nd day of August, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE